UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**RANDALL A. FRANZ**,<br><br>　　　　　Debtor.<br><br>**RICHARD J. SAMSON**,<br><br>　　　　　Plaintiff.<br><br>-vs-<br><br>**RANDALL A. FRANZ**,<br><br>　　　　　Defendant. | Case No. **10-61754-7**<br><br><br><br><br>Adv No. **16-00029** |

## MEMORANDUM of DECISION

At Butte in said District this 17th day of October, 2016.

Plaintiff commenced this Adversary Proceeding on April 26, 2016, by filing a complaint seeking the turnover of funds in the sum of $130,883.46 representing the Debtor/Defendant Randall A. Franz's one-third interest in funds derived from his deceased mother's probate estate following the conversion of his case to Chapter 7, which funds are property of this bankruptcy estate. Franz answered the Plaintiff's complaint on May 23, 2016, denying several of the allegations, requesting that this Adversary Proceeding be dismissed, that Richard J. Samson be removed as the Trustee of Debtor's bankruptcy case, and that the Court preclude Plaintiff from allegedly interfering in the Whitman County Probate Case. A pretrial scheduling conference was

1

held on May 23, 2016. The deadline for the parties to file pretrial motions was September 23, 2016. Trial is scheduled for November 3, 2016.

Since the date of filing of the Complaint in this Adversary Proceeding, the Trustee/Plaintiff has recovered the sum of $30,000 as part of a Court-approved settlement in Adversary Proceeding No. 15-21, *Samson v. Northquest*. The settlement in the *Northquest* case was approved by the Court on August 1, 2016, at docket no. 235. The receipt of the settlement funds by the Trustee from Northquest reduces Franz's obligation to the bankruptcy estate by $30,000 to the sum of $100,883.46.

Plaintiff filed his pending motion for summary judgment on September, 2016. Plaintiff's motion for summary judgment is accompanied by a separate brief in support and a Statement of Uncontroverted Facts (Document No. 11) which avers uncontroverted facts. The Plaintiff's motion, brief and Statement of Uncontroverted Facts were served upon Franz at his address of record in Sandpoint, Idaho. Franz filed a response on October 17, 2016, and makes numerous unsubstantiated allegations therein, but Franz did not file a separate statement of disputed issues as required by Mont. LBR 7056-1(a)(2). Pursuant to Mont. LBR 7056-1(a)(3), all material facts in Plaintiff's Statement of Uncontroverted Facts are deemed admitted.

Plaintiff's Statement of Uncontroverted Facts avers the following facts, which are supported by 26 attached exhibits:

1. The Debtor/Defendant, Randall A. Franz ("Franz" or "Debtor") commenced a bankruptcy case under Chapter 11, Title 11, U.S.C., on July 20, 2010. (Docket No. 1, Bankruptcy Case No. 10-61754).

2. The Debtor's case was converted to Chapter 7 by Order of the Court entered on

January 17, 2013 (Docket No. 170). The Plaintiff was appointed to serve as Trustee in the converted case on the same date (Docket No. 172).

3. Franz filed his original Schedules and Statement of Financial Affairs with the Court on August 3, 2010 (Docket No. 7).

4. Shortly after the filing of his Chapter 11 case, on October 22, 2010, Franz was appointed to serve as the Personal Representative for his deceased mother's probate estate by the Superior Court of the State of Washington, Whitman County. *See* Memorandum of Decision, [Adversary Proceeding No. 15-00003 ("AP# 15-03")], Docket No. 37 at pp. 4.

5. Following the conversion of his case to Chapter 7 on January 17, 2013, Franz, through his attorney, filed Amended Schedules A, B, C, D, F, H, I and J with the Court on March 2, 2013 (Docket No. 176).

6. Included on the Debtor's amended Schedule B in response to question 20 was a reference to Franz's "1/3 Beneficiary Interest in the Estate of Mary Ann Franz." Franz described the current value of his interest as "Unknown". *See* Schedule B, question 20, at Docket No. 176.

7. The Meeting of Creditors in the Debtor's converted case was conducted on March 4, 2013, in Missoula, Montana. At the time of the creditor meeting, Franz appeared and was sworn under oath and responded to the Trustee's questions. During the course of his creditor meeting, Franz responded to numerous questions posed by the Trustee related to the status of his deceased mother's probate estate. Trustee reminded Franz on numerous occasions during the course of the creditor meeting of his obligation to keep the Trustee advised as to the status of the proceeding and, in particular, the status of the sale of the "Marcus Place Apartments", which was the sole remaining real property in his deceased mother's estate. Franz acknowledged on numerous

occasions during the course of his creditor meeting his obligation to the keep the Trustee advised as to the status of the probate proceeding and the potential sale of the Marcus Place Apartments. *See* generally, Exhibit 2, Transcript of §341 Meeting of Creditors; *see also* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 9-10.

    8. On June 18, 2013, as a follow-up to a previous phone conversation, Trustee forwarded a letter to Franz's counsel, requesting that he be provided with copies of all relevant information related to the pending probate proceeding of Mary Ann Franz, including a copy of the Will, the Application for Probate, Letters Testamentary and the Notice to Heirs and Devisees. Trustee also requested an accounting of any distributions made in the probate proceeding. Finally, Trustee requested that Franz's counsel provide him with the status of the "one (1) remaining piece of real property that was yet to be liquidated." *See* Binney Tr. Ex. 1.

    9. Following his receipt of the Trustee's letter of inquiry, on June 19, 2013, Binney, through his legal assistant, Scott Allen, wrote to Franz requesting that he provide him with various documents from the probate proceeding and with an accounting of all distributions made to the heirs/devisees of Mary Ann Franz. Finally, Mr. Allen explained to Franz that "[the Trustee] is requesting to know the status of the remaining real property subject to the probate estate." *See* Binney Tr. Ex. 2.

    10. On or about June 27, 2013, acting in his capacity as the PR for his mother's probate estate, Franz sold certain real property located in Colfax, Washington generally referred to as the Marcus Place Apartments, for the gross cash sum of $640,000.00. *See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 12.

    11. After the payment of liens and encumbrances and other costs of sale, the probate

estate realized a net sales amount in the sum of $382,650.39, which was deposited into the probate estate account. The net sale amount was in addition to the earnest money deposit of $10,000.00, which brought the total net cash received from the sale to $392,650.39.  *See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 12-13.

12. Despite the Trustee's efforts to obtain information from either Franz or his attorney regarding the status of the probate proceeding and, in particular, the status of the sale of the Marcus Place Apartments, the requested information was not provided to the Trustee.  *See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 12.

13. Following the sale of the Marcus Place Apartments, Franz, in his capacity as the PR of his mother's estate, was involved in a series of transfers in which the sum of $376,895.86, was taken from the probate estate's bank account at American West Bank.  *See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 21.

14. All of the transactions referenced in paragraph 13, supra, took place after the conversion of Franz's bankruptcy case to Chapter 7 and without knowledge of the Trustee.  The total amount of funds which Franz took from his mother's probate estate account at American West Bank for his own personal use and benefit, or for gifts to family, is approximately $280,855.86, which left only $31,035.43 in the account as of November of 2014.  *See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 21-22.

15. On September 3, 2015, trial was held before this Court in [AP# 15-03] on the Complaint of the U.S. Trustee for revocation of the Debtor's discharge, pursuant to 11 U.S.C. § 727(d)(2), based on the Debtor acquiring property that is property of the estate or for becoming entitled to acquire property that would be property of the estate and knowingly and fraudulently

failing to report the acquisition of or entitlement to such property or to deliver or surrender such property to the trustee. *See* Docket No. 1, AP# 15-03; *see also* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 1.

16. On November 5, 201[5], the Court entered Judgment in [AP# 15-03] No. 15-03 against the Debtor/Defendant, Randall A. Franz, in favor of the Plaintiff, the United States Trustee, revoking the Debtor's previously entered discharge under 11 U.S.C. § 727(d)(2) and reinstating the debts of Franz. *See* Docket No. 38, AP# 15-03.

17. On the same date, the Court also entered its Memorandum of Decision setting forth the applicable facts and legal basis for entering Judgment against the Debtor/Defendant and in favor of the United States Trustee. *See generally* Memorandum of Decision, Docket No. 37, AP# 15-03.

18. In its Memorandum of Decision entered following the trial in AP# 15-03, the Court specifically found that "Franz agreed that he and his brothers each were entitled to one-third of the $382,650.39 net proceeds from the sale of the Marcus Place Apartments that occurred after his case was converted to Chapter 7, which came to $127,550.13." *See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 13.

19. In a footnote to the that finding by the Court related to a division of the net proceeds from the sale of the Marcus Place Apartments between the Debtor and his two brothers, the Court further stated:

> This does not include the $10,000 earnest money deposit, which increased the actual net proceeds from $382,650.39 to $392,650.39, and which, when divided by three, comes to $130,883.46 for each brother. (Citation omitted).

*See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 13, n.7.

6

20. Franz did not appeal the Court's Judgment entered on November 5, 2015, and the Judgment is now a final Order and Judgment of the Court. *See generally* Docket in AP# 15-03.

21. In response to questions posed to him by the Asst. United States Trustee at a Rule 2004 examination conducted on December 15, 2014, Franz admitted under oath that he failed to turnover to the Trustee any money from his 1/3 share of his deceased mother's estate:

> Q: But you knowingly took money that didn't belong to you, your one-third inheritance, and spent it, instead of giving it to your bankruptcy trustee after your conversion to Chapter 7? Fair statement?
>
> A: Yes. It was my mistake, yes.

*See* Memorandum of Decision, AP# 15-03, Docket No. 37, at pp. 18-19.

22. On April 4, 2016, Trustee commenced Adversary Proceeding No. [16-00029 ("16-29")] against Franz, seeking Judgment against Franz and in favor of the Trustee in the amount of $130,883.46, based on the Court's previous determination in AP# 15-03 that Franz failed to deliver or surrender Franz's 1/3 interest in the net proceeds from the sale of the Marcus Place Apartments. *See* Adversary Proceeding No. 16-29, Docket No. 1.

23. On August 30, 2016, and in conjunction with discovery in this Adversary Proceeding, and after notice to all parties, Trustee conducted the deposition of Jon R. Binney, Esq., Franz's former counsel in his bankruptcy case. *See generally* Deposition Transcript of Jon R. Binney, attached as Exhibit 1.

24. During the course of the deposition, Trustee inquired generally regarding Mr. Binney's communications with Mr. Franz following the conversion of the bankruptcy case to Chapter 7 on January 17, 2013. *See generally* Deposition Transcript of Jon R. Binney, Exhibit 1.

25. Trustee also inquired of Mr. Binney regarding particular legal advice that he may have

provided to Franz regarding his obligation to turn over his 1/3 interest in funds from the probate estate to the Trustee. Binney acknowledged that he advised Franz of his need to turn over his 1/3 interest in his mother's probate estate to the Trustee:

> Q: Okay. At any time in this case, Jon, did you ever advise Mr. Franz that he needed to turn over his one-third interest in the mother's probate estate to me?
>
> A: Yes, frequently.

*See* Binney Tr. at pp. 127, lines 9-13.

26. Trustee also inquired of Mr. Binney regarding legal advice he may have provided to Franz regarding other assertions made in his Answer filed in response to the Trustee's Complaint.

> Q: Again, [we're] going to look at paragraph 8 [of his Answer]. . . He says this was the result of meeting or hearing to convert in December 2012 with the U.S. Trustee Jensen and Attorney Binney, who instructed the debtor to have his wife file for divorce and a new bankruptcy in Idaho rather than just add her to this bankruptcy as a defendant as requested. So, I need to ask you, in December of 2012 was there ever a meeting between you, Mr. Jensen and Mr. Franz where you or Mr. Jensen instructed the debtor to have his wife, first off file for bankruptcy – or, excuse me, instructed his wife to file for divorce and file a bankruptcy in Idaho?
>
> A: No. I recall no such meeting.

Binney Tr. at pp. 122 - 123, lines 10-25; 1-6.

27. Later in the deposition, Trustee again questioned Mr. Binney regarding legal advice provided to Franz regarding a divorce from his spouse related to this bankruptcy[.]

> Q: Did you ever advise Mr. Franz that he should file for divorce with his wife as a mechanism by which he could divert money from his deceased mother's probate estate to satisfy a community property claim that she would have in the state of Idaho?
>
> A: No.

8

Binney Tr. at p. 128, lines 1-7.

28. Trustee also inquired of Mr. Binney regarding other allegations contained in Franz's Answer filed in this case.

> Q: Okay. On the next page [of Defendant's Answer at] paragraph 16, Jon, Mr. Franz in his answer alleges there are no real creditors in this case as the Trustee has led the Court to believe. What's your response to that comment where he says there are no real creditors in this case?
>
> A: Well, that's absolutely not true.
>
> Q: Are you aware of any other creditors that have filed claims in the case that have not been satisfied?
>
> A: There are - I mean, there are other – I believe there are other creditors, yes.
>
> Q: Yes. So when he makes the comment that there are no real creditors in this case, is that an accurate statement?
>
> A: No.

Binney Tr. at pp. 126-127, lines 17-25; 1-8.

As noted in the Plaintiff's Statement of Uncontroverted Facts, this Court entered a Judgment in AP# 15-3 on November 5, 2015, revoking Franz's discharge under 11 U.S.C. § 727(d)(2) and reinstating his debts. The aforementioned Judgment is accompanied by a 34-page Memorandum of Decision entered that same date at docket no. 37. Franz did not appeal the Court's Judgment and Memorandum of Decision entered in Adversary Proceeding No. 15-3 and that matter is now final. The Court adopts by reference the Memorandum of Decision entered in AP# 15-3 on November 5, 2015.

## DISCUSSION

Summary judgment is governed by F.R.B.P. 7056. Rule 7056, incorporating Rule 56(c),

Fed. R. Civ. P., states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (*quoting In re Aquaslide "N" Dive Corp.*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir.1985). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence. *Aquaslide*, 85 B.R. at 547.

The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986).

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv., Inc.*, 809 F.2d at 631.

This Court concludes that Plaintiff has satisfied his burden of showing that no genuine issue of material fact exists. This Court previously concluded in AP# 15-3 that Franz knowingly failed, despite being told by his attorney and the Plaintiff on numerous occasions, to keep Plaintiff informed about the sale of the Marcus Place Apartments, of which one-third of the net proceeds were property of the estate, and that Franz knowingly failed to report the acquisition of or entitlement to such property, or to deliver such property to Plaintiff.

The case was converted to a case under chapter 7 on January 17, 2013. The Court found that the sale of the Marcus Place Apartments closed in June or July of 2013. There was thus no serious dispute that Franz acquired that property of the bankruptcy estate or that he knowingly failed to report or deliver such property to the Plaintiff and that the United States Trustee has proven the elements of § 727(d)(2) by a preponderance of the evidence.

Franz testified in AP# 15-3 that his one-third share of the proceeds from the sale of the Marcus Place Apartments was $130,000 and Franz did not dispute that he spent the proceeds from sale of the Marcus Place Apartments. The Court noted in its November 5, 2015, Memorandum of Decision entered in AP# 15-3 that the Trustee had specific statutory duties under 11 U.S.C. § 704(a) to collect and reduce to money the property of the estate for which the trustee serves. The Debtor also had a specific statutory duty under 11 U.S.C. § 521(a)(4) to

"surrender to the trustee all property of the estate" and any information relating to property of the estate. By taking the $130,000, a one-third inheritance share of the sale of the Marcus Place Apartments, and spending it on himself and family members, Franz failed to perform his duty under § 521(a)(4) and hindered the Plaintiff in the performance of his trustee duties. The uncontroverted facts show that Plaintiff is now entitled to judgment against Franz in the amount of $100,883.46. Accordingly,

**IT IS ORDERED** a separate Order shall be entered granting Plaintiff's motion for summary judgment filed on September 23, 2016; and vacating the trial scheduled for November 3, 2016.

**IT IS FURTHER ORDERED** that the Court shall issue a separate judgment in favor of the Plaintiff Richard J. Samson and against the Defendant, Randall A. Franz, in the amount of $100,883.461, plus interest at the legal rate from the date of entry of Judgment, together with Plaintiff's costs of this action.

_____
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge